# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| HAWKEYE DRIVE, LLC, | No. 22-CV-81-CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | |
| Defendant. | |

_____

This matter is before the Court on defendant's motion for summary judgment on plaintiff's petition alleging breach of contract and insurer bad faith. (Docs. 2 & 22). Subsequently, the parties filed a stipulation of partial dismissal, dismissing Count II, the bad faith claim, with prejudice, which the Court **dismisses with prejudice** under Rule 12(b)(6) as discussed below. (Doc. 32). Plaintiff filed a resistance to defendant's motion for summary judgment in the form of responses to defendant's statement of undisputed material facts as well as plaintiff's own statement of undisputed material facts. (Doc. 26). Defendant filed a reply and response to plaintiff's statement of undisputed material facts. (Docs. 28 & 29). On October 17, 2023, the Court heard oral argument on defendant's motion for summary judgment. (Doc. 31). For the following reasons, the Court **grants** defendant's motion for summary judgment on Count I, breach of contract.

Plaintiff's motion to compel appraisal is also before the Court. (Doc. 27). Defendant filed a resistance to plaintiff's motion. (Doc. 30). On October 17, 2023, the Court also heard oral argument regarding plaintiff's motion to compel appraisal. (Doc.

31). Because of the Court's ruling on defendant's motion for summary judgment, the Court **denies as moot** plaintiff's motion to compel appraisal.

## I. BAD FAITH CLAIM DISMISSAL

On August 28, 2023, plaintiff attempted to dismiss without prejudice its claim under Count II of its petition alleging bad faith. (Doc. 24). Because this was not a proper way to dismiss a claim, the Court notified plaintiff at oral argument, on October 17, 2023, that the claim was not dismissed at that time. At oral argument, the Court instructed plaintiff to submit a stipulation of dismissal under Federal Rule of Civil Procedure 41 if the parties agreed to dismissal of the claim. The parties then submitted a Rule 41 stipulation of dismissal of the bad faith claim with prejudice on November 6, 2023. (Doc. 32).

The Court now notes that Rule 41 cannot be used to dismiss part of a lawsuit, but only an action in its entirety. *See Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018). The Court construes the Stipulation as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and, consistent with the parties' intent, the Court grants that motion and dismisses Count II with prejudice. *See Brooks v. Am. Fam. Ins. Co.*, No. 21-CV-95 CJW-MAR, 2022 WL 17475775 (N.D. Iowa Dec. 6, 2022).

## II. BACKGROUND

### A. Procedural History

On April 7, 2022, plaintiff filed this suit in the Iowa District Court for Linn County, Iowa, alleging breach of contract and bad faith by defendant. (Doc. 1, at 1). On August 3, 2022, defendant removed the action to this Court based on diversity of citizenship. (*Id.*); *see* 28 U.S.C. §§ 1332, 1441.

On August 10, 2022, defendant filed its answer to the petition. (Doc. 4). On August 21, 2023, defendant filed a motion for summary judgment under Federal Rule of Civil Procedure 56, and a brief in support of the motion. (Doc. 22). On September 11,

2023, plaintiff filed a resistance to defendant's motion for summary judgment.[1] (Doc. 26). Also on September 11, 2023, plaintiff filed a motion to compel appraisal. (Doc. 27). On September 18, 2023, defendant filed a "Response to Plaintiff's Position on [Defendant's] Statement of Undisputed Material Facts" as well as a response to plaintiff's statement of undisputed material facts. (Docs. 28 & 29). On September 25, 2023, defendant filed a resistance to plaintiff's motion to compel appraisal. (Doc. 30). On October 17, 2023, the Court heard oral argument on defendant's motion for summary judgment and plaintiff's motion to compel appraisal. (Doc. 31).

### B. Factual History

The following facts are undisputed unless otherwise noted. The Court will consider additional facts as they become relevant to its analysis.

#### 1. The Policy

Defendant initially issued a "Commercial Inland Marine Builder's Risk Policy" to plaintiff for the policy period from May 2018 through May 2019. (Doc. 26-1, at 1). Plaintiff renewed the policy for the subsequent policy period, from May 2019 through May 2020. (*Id.*). The policy covered a building under construction in Hiawatha, Iowa. (*Id.*).

---

[1] Plaintiff's resistance consists of: (1) a short statement of the case and its claim (Doc. 26); (2) plaintiff's responses to defendant's statement of undisputed material facts (Doc. 26-1); and (3) plaintiff's statement of undisputed material facts. (Doc. 26-2). Plaintiff did not file a brief or cite to any legal authority supporting its position in any of its summary judgment materials, as is required in Local Rule ("LR") 56(b) and LR 7(e). Also, in responding to defendant's statement of undisputed material facts, plaintiff fails to provide citations to the appendix in the one instance it denies defendant's material fact. (Doc. 26-1, at 5). *See* LR 56(b) ("A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact.").

The policy provides that defendant "will pay for direct physical loss or damage to Covered Property from any of the Covered Causes of Loss." (*Id.*). The policy defines "Covered Property" as "[b]uilding and structures while in the course of construction, erection or fabrication at the 'job site', including foundation of such buildings or structures[.]" (*Id.*, at 1–2). The building at issue is clearly at the "job site" according to the definition in the policy. Lastly, as relevant here, the policy provides:

> **e. WHEN COVERAGE WILL END**
> The insurance provided by this Coverage Form will end when one of the following first occurs:
> **(1)** This policy expires or is cancelled;
> **(2)** The property is accepted by the owner or buyer;
> **(3)** Your interest in the property ceases;
> **(4)** You abandon the construction with no intention to complete it; or
> **(5)** Unless we specify otherwise in writing:
> **(a)** 90 days after construction is complete; or
> **(b)** 60 days after any building described in the Declaration is:
> **(I)** Occupied in whole or in part; or
> **(II)** Put to its intended use for other than testing purposes.

(*Id.*, at 2; Doc. 23, at 45). In the above provision of the policy, "Your" and "You" refers to plaintiff, the insured, while "we" refers to defendant, the insurer. (Doc. 23, at 33).

## 2. *The Hailstorm and Adjusting the Claim*

On April 7, 2020, a hailstorm occurred in Hiawatha. (Doc. 26-1, at 2). On October 21, 2021, plaintiff submitted a claim to defendant for hail damage to the building caused by the hailstorm. (*Id.*; *see also* Docs. 22-2, at 2–3; 26-2, at 1).[2] On December

---

[2] It appears plaintiff made a clerical error in its response to defendant's statement of material facts, combining certain parts of defendant's statement of facts numbers 6 and 8, while skipping over defendant's fact 7. (Doc. 26-1, at 2). Plaintiff restates the missing and misstated facts it omitted, however, in its own statement of undisputed material facts, (Doc. 26-2, at 1), so the error is harmless, and each of defendant's facts 6, 7, and 8 are deemed admitted.

3, 2021, defendant inspected the building for damage and found hail damage to the roof. (Docs. 22-2, at 3; 26-2, at 1–2). At some point while adjusting the claim, defendant learned that the building may have been occupied or used in some way before the April 7, 2020 hailstorm. (Doc. 26-1, at 3). Defendant requested and obtained documentation from plaintiff regarding the construction, occupancy, and use of the building. (*Id.*).

### *3. The Construction, Occupancy, and Use of the Building*

The building was designed and intended for use as industrial flex space, specifically a "Warehouse/Office Building." (*Id.*). The plan for the building was to place customer entrances and parking spaces at the front of the building and docks at the rear. (*Id.*). In April 2018, plaintiff obtained building permits from the City of Hiawatha for installing the building's foundation and for erection of the exterior shell of the building. (*Id.*). In July 2018, plaintiff obtained a building permit from the city for "Build out of Suite A for tenant," and in November 2018, the city issued a "Certificate of Occupancy" for Suite A. (*Id.*, at 3–4).[3] In December 2018, plaintiff obtained a building permit from the city for "Tenant Buildout Suite D," and in February 2019 plaintiff received a Certificate of Occupancy for Suite D. (Doc. 26-1, at 4).

On February 23, 2018, plaintiff entered into a lease agreement for Suite A of the building with tenant "Access Systems," which was set to commence on October 1, 2018, but apparently in fact commenced on December 1, 2018. (*Id.*; Doc. 23-4, at 17). The lease stated that the tenant's "Use of Premises" was "only for office and storage of copiers, printers and networking systems." (Docs. 26-1, at 4; 23-4, at 18).

In November 2018, two individual tenants, collectively referred to as "Finish Tower," entered into a lease with plaintiff for Suite D of the building, with the

---

[3] The Certificate of Occupancy provides that the building, or at least a section of the building, was inspected and complies with the Building Code and Zoning Regulations of the city, and "may be occupied for the purpose of use as requested." (Doc. 23-4, at 14).

5

commencement date of March 1, 2019. (Doc. 26-1, at 4). The lease stated that the tenant's use was "only for office purposes, storage and general warehousing purposes." (*Id.*; Doc. 23-5, at 18).

In October 2019, "Hawkeye Electric," whose President, Timothy Wilson, is also the sole member of plaintiff, leased Suite B of the building with a commencement date of November 1, 2019. (Docs. 26-1, at 3–5; 23-4, at 7).[4]

Each tenant—Access Systems, Finish Tower, Hawkeye Electric, and Service Master—paid thousands of dollars of monthly rent to plaintiff. (Docs. 26-1, at 5; 23-4, at 9–10). A photo of the building taken in October 2019 shows the fully erected building, tenant signage on the building, and cars in the parking lot in front of the tenant spaces. (Doc. 26-1, at 5).

Finally, plaintiff did not notify defendant that the building was occupied in part or that it had been put to its intended use at any time prior to the April 2020 hailstorm. (*Id.*).[5]

### III. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in

---

[4] A fourth tenant, "Service Master," appears to have entered into a lease for Suite C, signed January 15, 2020, with a commencement date of April 1, 2020. (Doc. 23-4, at 10).

[5] Plaintiff denies this fact in its response to defendant's statement of undisputed material facts. (Doc. 26-1, at 5). Plaintiff does not, however, cite to any part of the summary judgment record to support its denial. In contrast, defendant cites to an affidavit made by its adjuster stating that plaintiff "had not notified [defendant], prior to April 7, 2020, that the subject building was occupied in part and/or put to its intended use." (*Id.*; Doc. 23-6, at 7). Thus, there is no factual issue on the point because plaintiff has not provided any evidence disputing defendant's affidavit.

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. The plaintiff may not then simply point to allegations made in its complaint but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v.*

*Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

The moving party's burden of production turns on its burden of persuasion at trial. If the moving party bears the burden of persuasion on the relevant issue at trial, it must support its motion with credible evidence available under Rule 56(c) that would entitle it to a directed verdict if not challenged at trial. *Celotex Corp.*, 477 U.S. at 331; *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993). But, if the moving party does not bear the burden of persuasion at trial, it has two options to satisfy its Rule 56 burden of production. First, it may submit affirmative evidence that negates an essential element of the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 331 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). Second, it may show that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.*

Once the moving party meets its burden of production, the nonmoving party must go beyond the pleadings and show by depositions, affidavits, or other evidence "specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation marks omitted). In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about

8

a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

## IV. DISCUSSION

Plaintiff's petition contains two counts, alleging defendant (1) breached the policy—i.e., the parties' contract, and (2) acted in bad faith. (Doc. 2, at 3–4).

Plaintiff's general allegation in the petition is that defendant denied plaintiff's claim arising from the hailstorm even though plaintiff was entitled to coverage for damage under the policy. (*Id.*, at 2–3). Plaintiff alleges in the petition that by renewing the policy for the 2020 period, defendant waived the so-called "occupancy provision" in the policy. (*Id.*, at 3).

In Count II, plaintiff alleges defendant committed insurer bad faith. (Doc. 2, at 3–4). The parties subsequently filed a joint stipulation of dismissal of Count II with prejudice (Doc. 32), and the Court dismissed Count II as discussed above. Thus, Count II is not at issue anymore.

### A. Breach of Contract

Defendant's argument here is fairly straight-forward. Defendant argues that it did not breach the contract because (1) coverage under the policy ends 60 days after the building is occupied in whole or in part, or 60 days after the building is put to its intended use, and (2) the building here was occupied in part and had been put to its intended use more than 60 days prior to the hailstorm. (Doc. 22-1, at 2).

Plaintiff did not submit a brief in resistance to defendant's summary judgment motion, so plaintiff did not explicitly make any legal argument. Through denials of facts, plaintiff's own statement of facts, plaintiff's petition, and as stated at oral argument, plaintiff's main position is that defendant waived the provision in the policy that defendant argues ended coverage when defendant agreed to renew the policy for the subsequent policy period from May 2019 through May 2020. (*See, e.g.*, Doc. 2, at 3).

9

### 1. Applicable Law

To prevail on a breach of contract claim under Iowa law, a plaintiff must show:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [the plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that the plaintiff has suffered damages as a result of the breach.

*Cross Over, LLC v. Raph Assocs., Inc.*, No. 19-CV-3040-CJW-MAR, 2020 WL 6531237, at *3 (N.D. Iowa, June 23, 2020) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)); *see also Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, 823 F.3d 1161, 1165 (8th Cir. 2016).

"Insurance policies are contracts between the insurer and the insured and must be interpreted like other contracts, the object being to ascertain the intent of the parties." *Jones v. State Farm Mut. Auto. Ins. Co.*, 760 N.W.2d 186, 188 (Iowa 2008) (quoting *Talen v. Emps. Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005)). Absent ambiguity, courts "determine the intent of the parties by looking at what the policy itself says." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015) (internal quotation marks omitted). Courts do not "strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id.* (quoting *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013)).

### 2. Analysis

The policy at issue here is a builder's risk policy. A builder's risk policy generally provides coverage for "both building materials and the partially constructed building until the time that the building is completed and the owner accepts the building or the contractor's insurable interest in the project ceases." *Farm Bureau Mut. Ins. Co. v. McAndrews Livestock Co.*, 791 N.W.2d 429 (Table), 2010 WL 3894271, at *3 (Iowa Ct.

App. 2010) (quoting *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 158 P.3d 209, 216 (Ariz. Ct. App. 2007)). These policies, however, "often contain specific termination clauses in an attempt to coordinate the respective risks between the builder and the eventual owner." *Id*.

The policy at issue here is in accord. It provides coverage for "[b]uilding and structures while in the course of construction, erection or fabrication at the 'job site', including foundation of such buildings or structures[.]" (Doc. 26-1, at 1–2). The policy here also includes termination clauses. Specifically, as relevant here, the policy provides that coverage terminates, unless defendant specifies otherwise in writing, "90 days after construction is complete," or 60 days after the building is either "occupied in whole or in part" or "put to its intended use for other than testing purposes." (Doc. 23, at 45).

The issue is whether coverage under the policy terminated prior to the loss, which turns on whether the building was occupied. The issue of whether the building was "occupied in whole or in part" must be viewed "with reference to the kind of structure or building insured." *Limburg v. German Fire Ins. Co.*, 57 N.W. 626, 627 (Iowa 1894). "A building is occupied when it is put to a practical and substantial use for the purpose for which it was designed." *Reliance Ins. Co. v. Jones*, 296 F.2d 71, 74 (10th Cir. 1961). When the building at issue was a home, and the family moved into the home for almost two months prior to the loss, the Iowa Supreme Court held that the family had occupied the home, and thus the builder's risk policy coverage had ceased by the time of the loss. *See Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 492 (Iowa 2000). A building can also be "occupied" where the owner leases space in the building. *See McCarty v. Md. Cas. Co.*, 429 F. Supp. 112, 115–16 (W.D. Ark. 1976).

Here, the building was designed to be a warehouse and office space. (Doc. 26-1, at 3). Several tenants entered into leases for space in the building, with the leases commencing in February 2018, March 2019, and November 2019. (*Id.*, at 4–5).

Examples of the leases' listed purposes of the tenants' occupancies as "office and storage of copiers, printers, and networking systems" and "office purposes, storage and general warehousing purposes." (*Id.*). The alleged loss occurred on April 7, 2020. (*Id.*, at 2).

The building was designed for warehouse and office space, and the tenants who leased the space generally used it for office, storage, and warehousing purposes. Thus, the tenants used the building "for the purpose for which it was designed." *Reliance Ins. Co.*, 296 F.2d at 74. The building was occupied, then, when the tenants began making use of the building, which occurred when the tenants' leases began. The undisputed facts show the three leases commenced in February 2018, March 2019, and November 2019. Each of these dates is more than 60 days prior to the April 7, 2020 hailstorm. Therefore, under the policy, coverage terminated prior to the hailstorm, and defendant is not required to provide coverage under the builder's risk policy.

In this case, the same analysis applies to the other termination provision—that is, that coverage terminates 60 days after the building is "put to its intended use for other than testing purposes." Again, the intended use was for office and warehousing, and the building had been put to those exact uses more than 60 days prior to the April 7, 2020 hailstorm. Thus, coverage is also not required under this policy termination provision.

Finally, plaintiff seems to assert in its petition that defendant waived the termination clauses in the policy by renewing the policy in May 2020. (Doc. 2, at 3). In its statement of undisputed material facts, however, plaintiff only asserts that the policy was renewed for the policy period from May 2019 through May 2020. (Doc. 26-2, at 1). Also, plaintiff did not notify defendant of the alleged hail damage to the building until October 21, 2021. (Doc. 26-1, at 2). In plaintiff's statement of facts, it asserts that, at the end of the final policy term, the builder's risk policy "was automatically renewed and transferred to an occupant commercial property still held by the Defendant." (Doc. 26-2, at 3).

12

Case 1:22-cv-00081-CJW-MAR   Document 33   Filed 11/20/23   Page 12 of 15

Waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)). "When the evidence is undisputed . . . the issue [of waiver] is one of law for the court." *Id.* Plaintiff has not pointed to any evidence tending to show that defendant waived the termination of coverage provisions. First, the undisputed evidence shows that plaintiff never informed defendant that the building was occupied. Defendant cannot make a knowing waiver without knowing the most important facts. Second, the undisputed evidence shows that plaintiff had not notified defendant of any damage, or that the building was occupied, at the time the policy was renewed for another period. Third, the provision specifies that the policy provisions apply "unless [defendant] specif[ies] otherwise in writing." (Doc. 26-1, at 2). Plaintiff has not alleged or argued that defendant specified otherwise in writing. Fourth, plaintiff has not pointed to any other evidence showing defendant relinquished a known right, which is required for waiver. Finally, regarding plaintiff's assertion that the builder's risk policy "automatically renewed and transferred" to a commercial property policy, plaintiff has pointed to no facts or law showing that this transformation is legally or contractually possible, and even if so, that it actually occurred.[6] Thus, plaintiff has not carried its burden on the issue of waiver, and the Court rejects any argument on this front.

---

[6] In the statement of fact asserting this transformation, plaintiff's citation says: "Please see all pleadings in this case." (Doc. 26-2, at 3). First, plaintiff's only pleading, its petition, does not seem to support this assertion, as the petition instead asserts that defendant waived the termination of coverage provisions in the policy. (Doc. 2, at 3). Second, and more importantly, "a party opposing a motion for summary judgment may not rest upon the mere allegations or denials of the pleadings, but by affidavits or as otherwise provided in Rule 56 must set forth specific facts showing that there is a genuine issue for trial." *Jaurequi*, 173 F.3d at 1085 (quoting *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997)).

For these reasons, the Court **grants** summary judgment as to plaintiff's claim of breach of contract.

### V. *MOTION TO COMPEL APPRAISAL*

On the day plaintiff filed its resistance to defendant's motion for summary judgment, plaintiff also filed a motion to compel appraisal. (Doc. 27). Defendant resisted plaintiff's motion. (Doc. 30). The appraisal clause in the policy may be triggered when plaintiff and defendant "disagree on the value of the property or the amount of loss[.]" (Doc. 27, at 3). Plaintiff claims it invoked the appraisal clause on August 2, 2023. (*Id.*, at 4).

"Coverage questions are for the court." *Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 913 N.W.2d 80, 91 (Iowa 2018). Plaintiff's obstacle here is that this case is not a simple disagreement over the amount of a loss. Instead, the issue is whether defendant owes plaintiff anything at all. The main issue is whether the termination of coverage provisions in the policy apply, and if so, whether defendant waived the provisions. These are not the proper issues for the appraisal process, but rather contract interpretation issues for the Court. Also, the Court already granted defendant summary judgment on the breach of contract claim, and the parties stipulated to dismiss the bad faith claim with prejudice, which the Court dismissed under Rule 12(b)(6). Therefore, the motion to compel appraisal is now moot.

For these reasons, the Court **denies as moot** plaintiff's motion to compel appraisal.

## VI. CONCLUSION

For these reasons, defendant's motion for summary judgment (Doc. 22) is **granted** as to breach of contract (Count I). Count II, the bad faith claim, is **dismissed with prejudice** under Rule 12(b)(6) (Doc. 32), and therefore defendant's motion for summary judgment as to plaintiff's bad faith claim (Count II) is **denied as moot**. Plaintiff's motion to compel appraisal (Doc. 27) is **denied as moot**.

**IT IS SO ORDERED** this 20th day of November, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa